P. L. GRAY *v.* HELEN GRAY

(No. 8732)

Submitted October 4, 1938. Decided October 18, 1938.

*E. L. Maxwell* and *Stanley Bosworth,* for appellant.
*Joseph J. Madden,* for appellee.

KENNA, JUDGE:

This is a divorce proceeding, the appeal having been granted to the final decree of the Circuit Court of Randolph County entered on the 31st day of August, 1937, awarding to the complainant, P. L. Gray, an absolute divorce from the respondent, Helen Gray, on the ground of habitual drunkenness subsequent to the marriage. The question of the jurisdiction of the Circuit Court of Randolph County is the sole problem with which we are concerned upon this appeal.

Until approximately the middle of December, 1935, both the husband and wife were non-residents of the State of West Virginia. At that time they moved from Ohio to Elkins with the intention of remaining. On March 30, 1936, Gray left his wife because of her drunkenness, but shortly thereafter they re-united. On July 21, 1936, the complainant's original bill, which prayed

that the respondent might be enjoined from intoxicated interference with the practice of his profession (he being a physician and she a trained nurse), was filed, and the restraining order was granted and served upon the respondent July 22nd. In August, 1936, the complainant left home.

On December 31, 1936, the complainant filed an amended and supplemental bill affixing to his charge of adultery that of habitual drunkenness. On February 19, 1937, the court entered an order awarding suit money and alimony *pendente lite* to the respondent. In March of the same year, the cause was referred to a commissioner in chancery before whom, on May 17th, respondent filed her answer to the amended and supplemental bill. The commissioner's report found in favor of the complainant, and after it was filed on August 31, 1937, the final decree was entered.

It will be observed that both parties had resided in West Virginia but seven months and ten days when the complainant's original bill, seeking a divorce on the ground of adultery, as well as a restraining order, was filed. At the time the amended and supplemental bill was filed they had resided in this State one year and twenty days.

The jurisdiction of the West Virginia courts in divorce causes is rigidly prescribed by statute. Code, 48-2-8, lays down certain conditions under which a suit for divorce shall not be maintainable in this State. Subsection (a) provides that where the cause for relief is adultery no suit for divorce shall be maintainable "unless one of the parties, at the commencement of the suit, is a bona fide resident of this State; * * * ." Upon this record as it now stands there can be no question but that the statute does not deprive the Circuit Court of Randolph County of its jurisdiction of the cause as alleged in complainant's original bill. But the cause which the original bill alleged was abandoned when the case was submitted, and divorce was sought on the ground of habitual drunkenness only. Our statute treats the two

grounds as being distinct and separable. The jurisdictional category under which habitual drunkenness falls is that dealt with in subsection (b) of the same section as that last quoted. It reads as follows:

"If the cause for divorce is other than adultery, unless one of the parties was, at the time the cause of action arose, a bona fide resident of this State and has been such a resident for at least one year next preceding the commencement of suit; * * * ."

It will be observed that the *bona fide* residence of one of the parties in this State is the only essential required to precede the bringing of suit for a definite length of time. Complainant must also be a *bona fide* resident of this State at the time the so-called cause of action arose, which, of course, must precede the bringing of suit, but no definite length of time is prescribed by statute that the cause must have arisen preceding the bringing of suit. One of the parties must reside here one year preceding the commencement of the suit.

Concerning adultery as a ground which would justify the Randolph Circuit Court taking cognizance of the cause, the appellant insists that complainant's original bill is a fraud upon the jurisdiction of that court, and that complainant was possessed of no information and produced no evidence that justified the bringing of a suit in which relief was sought on that ground. This is denied by the appellee, who takes the position that when sufficient time had elapsed to give the Circuit Court of Randolph County jurisdiction under a bill based upon the charge of habitual drunkenness, his amended and supplemental bill was filed, under which, although it repeated the charge of adultery, the only charge that was sought to be proven and the sole charge upon which the jurisdiction of the Circuit Court rested was that of habitual drunkenness.

We are not greatly concerned as to whether complainant could or could not have maintained the allega-

tions of his original bill. Had he done so, there would, of course, have been no question concerning the jurisdiction of the Circuit Court of Randolph County. Neither are we concerned with the question of when the cause for relief of habitual drunkenness arose. Appellant asserts that it arose in Ohio. Perhaps a cause did arise in Ohio, but that would still leave open the main query: Was not the suit in which the decree complained of was entered commenced at a time when one of the parties to the cause had been a *bona fide* resident of this State for at least one year and based upon a cause which arose in West Virginia?

There is ample testimony to sustain the charge of respondent's habitual drunkenness after she and complainant reached West Virginia. What is to be regarded as the time at which the suit for divorce upon the ground of habitual drunkenness was commenced? Does the cause for which relief is sought in the amended and supplemental bill relate back to the time the original process issued, in which case neither party had resided within the State for one year, or does it simply date from the time the amended and supplemental bill was filed, to which respondent, without objection, filed her answer going to the merits, in which case both the complainant and the respondent had resided in this State for a period slightly exceeding a year's time.

We are in no way dealing with the question of parties. It is to be conceded that the allegations of the original bill relate back to the time the process was issued. *Columbia Finance etc. Company* v. *Fierbaugh,* 59 W. Va. 334, 53 S. E. 468. Furthermore, that an *amended* pleading speaks as of the time of the original. *Baltimore & Ohio R. Co.* v. *McLaughlin,* 73 Fed. 509. Nevertheless, "while there is great liberality in courts of equity in permitting amendments, the practice will not justify the amendment of a bill so as to substitute for the original an entirely new cause of action, wholly disconnected with the former." *Newton* v. *Kemper,* 66 W. Va. 130, 66 S. E. 102.

Prior to the decision of the case of *Rees* v. *Emmons, etc., Co.,* 88 W. Va. 4, 106 S. E. 247, the rule adhered to in this State was that neither upon the chancery nor law side could an amendment bring in a new cause for equitable relief or a new cause of action. To the same effect as the *Newton* case is the opinion in *Lamb* v. *Cecil,* 28 W. Va. 653, 656, as follows:

"It is certainly well settled that a plaintiff can not, under the rule allowing amendments, abandon his original cause and substitute therefor one which is essentially different. He can not under the pretence of amendment introduce an original and different cause of action. The amendment must relate to the same identical cause, and demand substantially the same relief. But if these are the same it is not required that the form in which the claim is stated or the relief demanded shall be the same. One of the very purposes of the rule and practice allowing amendments is to relieve against informal and defective averments of the plaintiff's cause of action. Whenever the bill states facts from which the court can determine that the plaintiff has a cause which, if properly pleaded, would entitle him to relief, although the bill may not formally allege facts that entitle him to any relief, the plaintiff will be entitled to amend his bill so as to obtain the relief which his bill shows he would be entitled to if properly pleaded. But in all cases the cause of action must be *in substance* the same both in the original and amended bill, otherwise the amendment will be held to be a departure in pleading, treated as a new suit and therefore disallowed, or if allowed be subject to all the incidents and disadvantages of an original bill. *Piercy* v. *Beckett,* 15 W. Va. 444; *The Mercantile Insurance Company* v. *Verplauck,* 1 Edw. ch. 46; *Doonan* v. *Glynn,* 26 W. Va. 225. The general rule thus announced has been professedly followed in Virginia and this State, but in some instances here and especially in the English courts this rule has been departed from so far that it is scarcely

possible to give any very accurate idea of the scope of amended bills. See 1 Barth. Ch'y. Pr. 324."

The opinion of this Court in the case of *Floyd* v. *Duffy,* 68 W. Va. 339, 354, 69 S. E. 993, 999, 33 L. R. A. (N. S.) 883, contains the following language:

"The principal limitation upon the right of a plaintiff to amend his bill in this state, before submission, is, that he shall not depart from the original cause of action or make a new case. That has not been done here. He may correct mistakes in his original bill by an amendment. *Burlew* v. *Quarrier,* 16 W. Va. 108; *Piercy* v. *Beckett,* 15 W. Va. 444; *Doonan* v. *Glynn,* 26 W. Va. 225; *Ratcliff* v. *Sommers,* 55 W. Va. 30."

But thereafter, without referring to the opinion in the *Duffy* case, the opinion in *Rees* v. *Coal Mining Co.,* 88 W. Va. 4, 10, 106 S. E. 247, had the following to say:

"To limit the right of amendment to the case or the cause of action stated in the original bill would give it a scope much narrower than our decisions have accorded. Exclusion of matters merely foreign to the general subject matter of the original plea affords room for amendment and yet does not permit the litigation to spread beyond reasonable bounds. 'Case' and 'cause of action' have technical meanings and the right of amendment goes beyond them. Procedure in one suit, for an injunction to prevent extraction of minerals and for an accounting for minerals already taken out, is both permissible and usual."

This is carried into the first syllabus point. Bearing in mind that there is a sharp distinction to be drawn in a chancery cause between *the ground* for equitable relief and the relief *asked,* we feel disposed, to the extent necessary, to overrule the holding in the *Rees* case and to hold that where new ground for equitable relief is added to the allegations of the bill it constitutes a new cause and is

not an amendment. This is not to say that additional specific prayers for relief may not by amendment be added to the prayer of the original bill based upon the same cause for equitable relief. See the monographic note on Amendments, 35 West Virginia Law Quarterly, 64, 69. Also see Code, 56-4-25.

Certainly it cannot be contended that the charge of adultery is the same cause for equitable relief in a divorce proceeding as is the charge of habitual drunkenness. This being so, the filing of what is termed an amended bill in this suit should be regarded as the bringing of a new cause seeking equitable relief. For a general discussion, see *Hale* v. *Hale*, 104 W. Va. 254, 139 S. E. 754. In this cause, after the amended bill was filed, the respondent appeared generally and filed her answer. At the time the amended bill was filed (December 31, 1936) both the complainant and the respondent had been *bona fide* residents of this State for at least a year next preceding the filing of the amended bill, which we are terming the commencement of a new suit. The proof is sufficient to sustain a finding that the ground upon which the relief granted was based had occurred in West Virginia. These facts were sufficient to vest the Circuit Court of Randolph County with jurisdiction under Code, 48-2-8, subsection (b). We, therefore, think that the Circuit Court of Randolph County did not err in the decree it entered.

*Affirmed.*